**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christian Josiah Guinan Henry, | No. CV-24-03366-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Christian Josiah Guinan Henry's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("Defendant") denial of Social Security benefits. (Doc. 10-3). The appeal is fully briefed, (Doc. 12, 18, 19), and the Court now rules.

## I. BACKGROUND

On appeal, this Court considers whether the ALJ erred by: (1) partially rejecting the medical opinions of a clinical psychologist and Plaintiff's treating physician, and (2) rejecting Plaintiff's subjective symptom testimony.

### A. Factual Overview

Plaintiff applied for Child's Disability Benefits on August 4, 2020, alleging disabilities beginning on November 30, 2019, including major depressive disorder with psychosis, generalized anxiety disorder, obsessive compulsive disorder, intermittent explosive disorder, mood disorder, and ADHD. (Doc. 10-3 at 20, 24). Plaintiff alleged that his mental symptoms and difficulty interacting with others rendered him "unable to engage

in any work activity." (Doc. 10-3 at 24). Plaintiff's claim was initially denied on January 11, 2021, and upon reconsideration on August 26, 2022. (Doc. 10-3 at 19). Plaintiff requested a hearing before an ALJ, which was held via online video on June 15, 2023. (Doc. 10-3 at 20). The ALJ issued her decision on January 29, 2024, finding that Plaintiff was not disabled under Section 223(d) of the Social Security Act at any point before he turned 22. (Doc. 10-3 at 33). The SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision and adopted it as final on June 25, 2025. (Doc. 18 at 10).

Plaintiff filed the present appeal following this unfavorable decision. (Doc. 1).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that he "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do his previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c).

1   If the claimant does not have a severe impairment or combination of impairments, the ALJ
2   will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

3       At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or
4   equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* §
5   404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ
6   must assess the claimant's "residual functional capacity" ("RFC") before proceeding to
7   Step Four. *Id.* §§ 404.1520(a)(4)(iii), (e). The claimant's RFC refers to his ability to
8   perform physical and mental work activities "despite [his] limitations," based on all
9   relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine a claimant's RFC,
10  the ALJ must consider all the claimant's impairments, including those that are not "severe,"
11  and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§
12  404.1545(a)(1)–(2).

13      At Step Four, the ALJ determines whether the claimant has the RFC to perform the
14  physical and mental demands of "[his] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), (e).
15  "Past relevant work" is work the claimant has "done within the past five years that was
16  substantial gainful activity." *Id.* § 404.1560(b)(1)(i). If the claimant has the RFC to perform
17  his past relevant work, the ALJ will find the claimant is not disabled. *Id.* §
18  404.1520(a)(4)(iv). If the claimant cannot perform his past relevant work, the ALJ will
19  proceed to Step Five.

20      Finally, at Step Five, the ALJ considers whether the claimant "can make an
21  adjustment to other work," considering his RFC, age, education, and work experience. *Id.*
22  § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant
23  cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C. The ALJ's Application of the Factors

25      Here, at Step One, the ALJ concluded that Plaintiff "has not engaged in substantial
26  gainful activity since November 30, 2019, the alleged onset date." (Doc. 10-3 at 22). At
27  Step Two, the ALJ determined that Plaintiff had the following severe impairments before
28  turning 22: major depressive disorder; generalized anxiety disorder; ADHD, and

intermittent explosive disorder. (Doc. 10-3 at 22).

At Step Three, the ALJ determined that Plaintiff, before turning 22, did not have any impairment or combination of impairments that met or medically equaled a listed impairment in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (Doc. 10-3 at 23). The ALJ then determined that Plaintiff had the RFC

> to perform a full range of work at all exertion levels but with the following non[-]exertional limitations: can understand, remember, and carry out simple instructions and make simple, work-related decisions in a routine work setting; can perform tasks in a work setting that is free from fast-paced production rates, like those found in assembly line work; can occasionally interact with supervisors; occasionally and superficially interact with coworkers, such that the interaction is brief, casual and incidental to the task performed; cannot have any interaction with the public.

(Doc. 10-3 at 25).

At Step Four, the ALJ found that Plaintiff has no past relevant work. (Doc. 10-3 at 32). At Step Five, the ALJ found that Plaintiff could perform a significant number of jobs in the national economy given Plaintiff's age, education, work experience, and RFC. (Doc. 10-3 at 32). Examples of such jobs included kitchen helper and various cleaner positions. (Doc. 10-3 at 32). Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act from the alleged onset date through December 4, 2023, the date he turned 22. (Doc. 10-3 at 33).

## II.    LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may only review the reasons the ALJ provides in the disability determination, and "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III.    DISCUSSION

Plaintiff argues that the ALJ "commit[ted] materially harmful error" by rejecting the assessments from psychologist An Nguyen, Psy.D. ("Dr. Nguyen"), and Plaintiff's treating psychiatric mental health nurse practitioner, Amanda Radcliffe, PMHNP ("NP Radcliffe"). (Doc. 12 at 1–2). Plaintiff also asserts that the ALJ failed to provide specific, clear, and convincing reasons, supported by substantial evidence, for his rejection of Plaintiff's subjective symptom testimony. (Doc. 12 at 2). The Court considers each claim in turn.

### A.  Dr. Nguyen and NP Radcliffe

Plaintiff argues the ALJ erred by rejecting Dr. Nguyen's and NP Radcliffe's assessments without providing sufficient explanation supported by substantial evidence, including "failing to explain the consideration of supportability and consistency factors." (Doc. 12 at 11). Defendant argues that the ALJ reasonably considered Dr. Nguyen's and NP Radcliffe's opinions. (Doc. 18 at 4).

#### 1.  Legal Standard for Evaluation of Medical Opinions

Courts in the Ninth Circuit previously distinguished among treating physicians, examining physicians, and non-examining physicians, generally giving the greatest weight

to the opinions of treating physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). This distinction was referred to as the "treating physician rule." *See Regula v. Delta Family-Care Survivorship Plan*, 266 F.3d 1130, 1139 (9th Cir. 2001), *cert. granted, vacated sub nom. Regula v. Delta Family-Care Disability & Survivorship Plan*, 539 U.S. 901 (2003). However, "in March of 2017, the [SSA] amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 2017 WL 168819, *5852–57 (Jan. 18, 2017)). Claims filed on or after March 27, 2017, must adhere to the amended regulations. *Id*. These regulations state that the ALJ "will not defer or give any specific evidentiary weight including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . .medical sources." 20 C.F.R. §§ 404.1520c, 416.920c.

In addition to the abrogation of the "treating physician rule," as of March 20, 2017, the amended SSA regulations specify that the ALJ must "consider all medical opinions according to several enumerated factors, including, whether the opinion is supported by objective medical evidence and whether the opinion is consistent with the evidence from other sources." *Alonzo,* 2020 WL 1000024, at *3. Supportability and consistency are the "most important factors," and the ALJ must explain how she considered the evidence in light of these two factors for a medical source's opinions. 20 C.F.R § 404.1520c(b)(3).

Moreover, the Ninth Circuit recently determined that in cases governed by the amended SSA regulations above, the "specific and legitimate" standard is also no longer applicable. *See Woods v. Kijakzi*, 32 F. 4th 785, 792 (9th Cir. 2022). In *Woods*, the Ninth Circuit concluded the following:

> Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

1   *Id.* (quotations and internal citations omitted). Accordingly, it is not required that an ALJ

2   provide "specific and legitimate reasons" to reject a treating physician's assessment. *Id.* at

3   791. Rather, an ALJ's decision to discredit any medical opinion must simply be supported

4   by substantial evidence. *Id.* at 787.

5         As discussed previously, the ALJ, not the reviewing Court, is responsible for

6   resolving ambiguities and conflicts in medical testimony and the medical record. *See*

7   *Andrews*, 53 F.3d at 1039. Thus, when the evidence of record could result in more than one

8   rational interpretation, "the ALJ's decision should be upheld." *Orn*, 495 F.3d at 630; *see*

9   *also Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("[I]f the

10  evidence can support either outcome, the [C]ourt may not substitute its judgment for that

11  of the ALJ.").

12              **2.  The ALJ's Evaluation of Dr. Nguyen's Medical Opinion**

13        Regarding Dr. Nguyen's assessment of Plaintiff, the ALJ found as follows:

14        An Nguyen, Psy.D., performed a consultative psychological evaluation on
          October 26, 2023, and diagnosed major depressive disorder, recurrent
15        moderate, and unspecified anxiety disorder (20F). Dr. Nguyen states the
          claimant has no limitations in his ability to understand, remember and carry
16        out instructions, noting claimant's memory scores were low average and
          average ranges. However, Dr. Nguyen did find that[,] secondary to the
17        claimant's depression and anxiety symptoms, he will have difficulty
          interacting with others, including severe difficulties interacting appropriately
18        with coworkers, supervisors and members of the general public, as well as
          severe difficulty responding appropriately to usual work situations [and to]
19        changes in a routine work setting. Dr. Nguyen added that no other
          capabilities are affected by the claimant's impairments. This opinion is
20        partially persuasive based on its consistency with the medical evidence
          regarding the claimant's severe impairments and related limitations, to the
21        extent it supports the RFC as established herein. Dr. Nguyen understands the
          disability program and related requirements, reviewed a significant portion
22        of the claimant's medical records, and examined and directly observed the
          claimant. Dr. Nguyen's finding and opinion are based on review of the
23        record, objective test findings, and observations. However, the term "severe"
          is not clearly defined as referenced in the doctor's assessment. Information
24        contained in Dr. Nguyen's clinical interview and testing did not fully explain
          this rather extreme assessment, and the greater record generally does not
25        document social limitations to such an extent.

26  (Doc. 10-3 at 30–31).

27        Plaintiff claims that the ALJ erred in rejecting Dr. Nguyen's opinion because: (1)

28  the ALJ failed to further develop the record to clarify why Dr. Nguyen believed Plaintiff's

social limitations were "severe,"; (2) the ALJ failed to articulate how Dr. Nguyen's assessment was "inconsistent with the medical evidence such that the ALJ could not rely on it to find [Plaintiff] disabled"; (3) Dr. Nguyen's opinion regarding the extent of Plaintiff's social limitations was consistent with the record, and thus an insufficient reason to reject her assessment; and (4) the ALJ failed to provide a supportability analysis of Dr. Nguyen's assessment. (Doc 12 at 14–15). The Court addresses each of these alleged errors in turn. Because alleged errors (2) and (3) both go to the ALJ's consistency analysis, the Court addresses them together.

a.  ALJ's Duty to Develop the Record re: Plaintiff's "Severe" Social Limitations

The ALJ found Dr. Nguyen's assessment was only "partially persuasive" because Dr. Nguyen concluded Plaintiff had "severe" social limitations. (Doc. 10-3 at 30). The ALJ noted the term "severe" was not clearly defined in the assessment and that Dr. Nguyen failed to explain her "rather extreme" opinion. (Doc. 10-3 at 31). Plaintiff argues the ALJ erred by discounting Dr. Nguyen's opinion on this basis, contending the ALJ had a duty to develop the record and clarify the doctor's finding, instead of "simply dismiss[ing] the evaluation without explanation." (Doc. 12 at 15).

ALJs have a "special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). This duty is only triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* at 459–60.

Plaintiff does not allege—and the Court's own review did not reveal—that the record before the ALJ was "either ambiguous or inadequate to allow for proper evaluation of [his] claim." *Flynn v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08308-PCT-MTL, 2022 WL 3552433, at *3 (D. Ariz. Aug. 18, 2022). Here, the ALJ conducted a hearing and reviewed the available medical evidence, including a report from Plaintiff's treating physician. At the close of the hearing, the ALJ ordered that the record be held open for 30

days to allow Plaintiff's academic records to be submitted for consideration. (Doc. 10-3 at 86). Following the submission of those records, the ALJ ordered a consultative psychological exam—performed by Dr. Nguyen—"the report of which was received, duly considered, and admitted into evidence." (Doc. 10-3 at 20).  Dr. Nguyen's psychological assessment completed the record, which was then closed. (Doc. 10-3 at 20). The Court is satisfied that the ALJ, by both: (1) allowing Plaintiff to supplement the record with additional information, and (2) ordering a post-hearing medical evaluation, satisfied her duty to fully and fairly develop the record. *See Thompson v. Comm'r of Soc. Sec. Admin.*, No. CV-25-00365-PHX-JAT, 2025 WL 2555732, at *5 (D. Ariz. Sept. 5, 2025) (finding ALJ discharged the duty to develop the record by giving plaintiff "two extra weeks after the hearing to obtain additional medical records").

Even if the Court accepted Plaintiff's argument that the ALJ should have taken further action to clarify Dr. Nguyen's definition of the term "severe," any error in failing to do so is harmless. The ALJ explained that Dr. Nguyen's characterization of Plaintiff's social limitations as "severe" conflicted with the greater record, which did not "document social limitations to such an extent." (Doc. 10-3 at 31); *see also Presley-Carrillo v. Berryhill*, 692 F. App'x 941, 944–45 (9th Cir. July 3, 2017) (ALJ's criticism of a doctor's failure to define various terms in his assessment without "rais[ing] such concerns at the hearing" violated the ALJ's duty to develop the record, but this error was harmless "because the ALJ gave a reason supported by the record for not giving much weight to [the doctor's] opinion").

### b.  ALJ's Consistency Analysis

Plaintiff contends the ALJ failed to explain how Dr. Nguyen's assessment was inconsistent with other medical evidence. (Doc. 12 at 13). He argues Dr. Nguyen's opinion regarding Plaintiff's "severe" social limitations *is* consistent with the record because the ALJ acknowledged his "marked social limitations" and the treatment records showed Plaintiff "was verbally abusive when he was in school . . . disrespectful in mental health appointments . . . [and] disheveled, unkempt, and malodorous in public settings." (Doc. 12

1    at 15).

2        The ALJ's decision explained that Dr. Nguyen's characterization of Plaintiff's

3    social limitations as "severe" conflicted with the "greater record generally." (Doc. 10-3 at

4    30–31). The ALJ did not cite to the "greater record" to support this finding. However,

5    reviewing courts do not view portions of an ALJ's decision in isolation. Rather, in

6    determining whether an ALJ's decision is supported by substantial evidence, the Court

7    looks "to *all* pages" of the decision and reads it "as a whole." *See Kaufmann v. Kijakazi*,

8    32 F.4th 843, 851 (9th Cir. 2022) (to properly assess an ALJ's decision, a reviewing court

9    must "look to *all* the pages of the ALJ's decision") (emphasis in original); *Labine v.*

10   *Comm'r of Soc. Sec. Admin.*, No. CV-19-04528-PHX-JZB, 2020 WL 6707822, at *4 (D.

11   Ariz. Nov. 16, 2020) ("The [C]ourt reads the ALJ's decision as a whole, and not just one

12   sentence of it in a vacuum. Thus, based on the ALJ's earlier analysis . . . the Court can

13   'reasonably discern' what evidence the ALJ is referring to when stating that [the evidence

14   is unsupported or inconsistent with the record].").

15       The Court acknowledges that it would be easier to follow the ALJ's reasoning if all

16   the considerations pertinent to her analysis of Dr. Nguyen's medical opinion appeared in

17   the same place. The Court also recognizes that an ALJ is only required to discuss and

18   evaluate the evidence supporting her conclusion and need not do so in a specific location

19   within the decision. *See Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013). Based on

20   the entirety of the decision, this Court can "reasonably discern" what evidence the ALJ

21   relied on to support her decision to partially discredit Dr. Nguyen's assessment. *Alaska*

22   *Dep't of Env't Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004) ("Even when an agency

23   explains its decision with 'less than ideal clarity,' a reviewing court will not upset the

24   decision on that account 'if the agency's path may reasonably be discerned.'" (quoting

25   *Bowman Transp., Inc. v. Arkansas—Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974))).

26   When the ALJ acknowledged Plaintiff's marked limitation "in terms of interacting with

27   others," (Doc. 10-3 at 23), she identified three pieces of evidence contrary to Dr. Nguyen's

28   determination that Plaintiff had *severe* social limitations.

First, citing Dr. Nguyen's own report, the ALJ noted Plaintiff was "friendly and cooperative on consultative exam in October 2023." (Doc. 10-3 at 24, citing Doc. 11-6 at 28 (describing Plaintiff's demeanor as "calm, friendly, and compliant," and noting he was "friendly and cooperative" during testing)). Essentially, Dr. Nguyen reported that Plaintiff was friendly and cooperative during the exam but then determined, in that same report, he "has severe difficulty interacting appropriately" with the public, supervisors, and coworkers. (Doc. 11-6 at 3, 6). The internal inconsistency of Dr. Nguyen's findings provides a basis to partially discredit her assessment. *See Connett v. Barnhart*, 340 F.3d 871, 874–75 (9th Cir. 2003) (finding the fact that a physician's opinion was not supported by his own treatment notes was a valid reason to not credit the opinion); *see also Houghton v. Comm'r Soc. Sec. Admin.*, 493 F. App'x 843, 845 (9th Cir. Aug. 12, 2012) (holding that the ALJ's conclusion that a medical source's opinions were "internally inconsistent" established a specific and legitimate basis to discount them).

The ALJ also cited a consultative evaluation from December 2020, where the examining doctor described Plaintiff as "cooperative." (Doc. 10-3 at 23–24, citing Doc. 10-10 at 180). This evidence supports the ALJ's finding that Plaintiff "has interacted appropriately with medical personnel," which suggests his social limitations are less extreme than Dr. Nguyen's report indicated. (Doc. 10-3 at 23). Beyond these two medical evaluations, the ALJ referenced her own interactions with Plaintiff, noting that he acted appropriately at the hearing. (Doc. 10-3 at 23). Because this evidence suggests Plaintiff can conduct himself in a friendly, cooperative, appropriate manner in public, it is inconsistent with Dr. Nguyen's conclusion that Plaintiff struggles with severe social limitations. Accordingly, substantial evidence supports the ALJ's decision to partially discredit Dr. Nguyen's assessment. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

c.  Lack of Supportability Analysis

Plaintiff asserts that the ALJ erred by failing to perform a supportability analysis of Dr. Nguyen's assessment. (Doc. 12 at 15). Defendant failed to meaningfully respond. (Doc. 18 at 6). Ultimately, the Court need not address this argument. For reasons previously stated, there is substantial evidence in the record supporting the ALJ's decision to partially reject Dr. Nguyen's assessment due to its internal inconsistency, and its inconsistency with both other record evidence and the ALJ's own observations of Plaintiff at the hearing. Because the ALJ properly discounted Dr. Nguyen's opinion on inconsistency grounds, any error stemming from her alleged failure to conduct a supportability analysis is harmless and does not warrant reversal. *Archunde v. Comm'r of Soc. Sec. Admin.*, CV-24-01993-PHX-JAT, 2025 WL 520534, at *6 (D. Ariz. Feb. 18, 2025) (citing *Woods*, 32 F.4th at 793 n.4 (indicating that even where an ALJ provides no supportability analysis for a medical opinion, the ALJ may properly find the opinion unpersuasive if there is an inconsistency finding supported by substantial evidence)); *see also Collins v. Colvin*, No. 23-35526, 2024 WL 5040992, at *2 (9th Cir. Dec. 9, 2024) (because the inconsistency of the doctor's opinion provided a sufficient basis to find it unpersuasive, "any error related to the supportability analysis counts as harmless and does not provide a basis for reversing").

**3. The ALJ's Evaluation of NP Amanda Radcliffe**

NP Radcliffe is a behavioral health practitioner who had treated Plaintiff for approximately three years at the time of her evaluation. (Doc. 11 at 135). The ALJ summarized NP Radcliffe's assessment as follows:

> Amanda Radcliffe, PMHNPBC, a behavioral health nurse practitioner[,]. . . completed a mental assessment on June 13, 2023, and diagnosed [the claimant with] generalized anxiety disorder, unspecified mood disorder, ADHD, predominantly inattentive type, social phobia, rule out bipolar disorder, and OCD. She noted claimant had demonstrated a fair response to medication and case management, with good prognosis if claimant continues to adhere to treatment. She opined the claimant has marked limitations interacting with others, concentrating, persisting or maintaining pace, and adapting or managing oneself. She assessed extreme limitations maintaining abilities and aptitudes required for semiskilled work, including setting realistic goals [and] making plans independently of others in dealing with stress of semiskilled work. She otherwise confirmed the claimant does not have low IQ or reduced intellectual functioning. In addition[,] [s]he stated the claimant would miss work more than 4 days per month due to his

- 12 -

impairments in treatment.

(Doc. 10-3 at 31; *see also* Doc. 11 at 133–38).

The ALJ found NP Radcliffe's opinion "partially persuasive based upon its consistency with the medical evidence regarding the claimant's severe mental impairments and related limitations, but only to the extent that it supports the limitations outlined in the RFC." (Doc. 10-3 at 31). The ALJ discredited NP Radcliffe's opinion that Plaintiff had marked limitations concentrating, persisting or maintaining pace, and adapting or managing oneself, concluding that Plaintiff "had no more than moderate limitations" in those areas. (Doc. 10-3 at 31). The ALJ reasoned that NP Radcliffe's report, which categorized Plaintiff's mental functioning limitations as mostly "marked and extreme," was "somewhat inconsistent" with the record. (Doc. 10-3 at 31).

Plaintiff claims that the ALJ erred by partially rejecting NP Radcliffe's assessment because the ALJ did not explain why Plaintiff's "limitations concentrating, persisting, or managing pace, and adapting or managing oneself" were "no more than moderate." (Doc. 12 at 16). Contrary to Plaintiff's assertion, the ALJ *did* explain why Plaintiff had only a moderate, rather than marked, limitations in these areas. The ALJ noted that a marked limitation in mental functioning was "inconsistent with [Plaintiff's] observed and reported levels of functioning, as well as [NP] Radcliffe's notation that claimant has responded fairly well to treatment and that he has a good prognosis based on continued compliance." (Doc. 10-3 at 31).

Plaintiff complains that the ALJ failed to explain how NP Radcliffe's findings were inconsistent with Plaintiff's "observed and reported level of functioning." (Doc. 12 at 17). But other record evidence, in addition to NP Radcliffe's own report, support the ALJ's inconsistency finding.

For example, Plaintiff completed a 2.5-hour psychological evaluation, which included an interview portion, various psychological tests, and processing speed tasks. (Doc. 11-6 at 26–32). The ALJ, citing this evaluation, noted that Plaintiff "does not require redirection on tasks" and is able to "complete interviews in a timely manner without

1  unnecessary breaks." (Doc. 10-3 at 24, citing Doc. 11-6). Plaintiff is also "independent in

2  self-care" and "capable of using public transportation if necessary." (Doc. 10-3 at 24). This

3  record evidence suggests that Plaintiff's mental functioning is not limited to the extent NP

4  Radcliffe alleged.

5        Further, NP Radcliffe's report was internally inconsistent. NP Radcliffe's report

6  contained a checked-box form detailing various examples of "mental abilities and aptitudes

7  needed to do unskilled work."[1] The form allowed NP Radcliffe to select Plaintiff's alleged

8  limitation regarding each ability/aptitude: "unlimited or very good," "limited but

9  satisfactory," "marked," or "extreme." (Doc. 11 at 135). NP Radcliffe indicated Plaintiff

10 had mostly marked or extreme limitations in each category. (Doc. 11 at 135–36). However,

11 NP Radcliffe also stated that Plaintiff's response to treatment was "fair" and that his

12 prognosis was "good if he stays on medications, [and] takes [his] oral meds as prescribed."

13 (Doc. 11 at 133–34). The form also asked whether Plaintiff had "a low IQ or reduced

14 intellectual functioning," and NP Radcliffe answered "no." (Doc. 11 at 137).

15       NP Radcliffe's statements that Plaintiff: (1) responds fairly to treatment, (2) has a

16 good prognosis upon compliance with his treatment plan, and (3) does not have "reduced

17 intellectual functioning," are inconsistent with her opinion that his mental limitations are

18 generally marked or extreme. Accordingly, the ALJ's decision to partially discredit NP

19 Radcliffe's opinion is supported by substantial evidence. *See Garcia v. Comm'r of Soc.*

20 *Sec. Admin.*, CV-21-00191-PHX-JJT, 2022 WL 14813733, at *5–6 (D. Ariz. Oct. 26, 2022)

21 (affirming ALJ's rejection of treating physician's opinion regarding the extent of Plaintiff's

22 limitations where physician's own treatment notes described "typical to fair findings" and

23 a "good" prognosis); *Connett*, 340 F.3d at 874–75 (finding the fact that a physician's

24 opinion was not supported by his own treatment notes was a valid reason to not credit the

25 opinion); *see also Houghton*, 493 F. App'x at 845 (holding that the ALJ's conclusion that

26 a medical source's opinions were "internally inconsistent" established a specific and

27

28

---

[1]    Examples included "interact with others," "concentrate, persist, or maintain pace," "adapt or manage oneself," "remember work-like procedures," "maintain attention for a two hour segment," and so on. (Doc. 11 at 135–36).

legitimate basis to discount them).

Plaintiff argues that NP Radcliffe's statements regarding his "fair" response to treatment and "good" prognosis were not inconsistent with any of her assessed limitations. (Doc. 12 at 17–18). The Court disagrees. NP Radcliffe is a behavioral health nurse practitioner who diagnosed Plaintiff with generalized anxiety, unspecified mood disorder, and ADHD. (Doc. 11 at 133). Plaintiff is prescribed medication to combat the behavioral issues stemming from those diagnoses. NP Radcliffe's statement that Plaintiff's response to treatment is "fair" suggests that the medication *does* control or combat those symptoms to some extent. And her statement that Plaintiff has a "good" prognosis suggests that Plaintiff could successfully manage his symptoms if he were to continue to take his medication.

Plaintiff further argues that the fact he was "'responding to treatment' does not mean his impairments had improved such that he could sustain work, and the ALJ did not cite to evidence of such improvements." (Doc. 12 at 18). He claims that, even when complying with his injectable antipsychotic medication, reports still described him as unkempt, disheveled, anxious, and paranoid. (Doc. 12 at 18). Relying on those reports, Plaintiff claims the record "does not show . . . [Plaintiff's] conditions improved with treatment such that NP Radcliffe's assessment was unsupported or inconsistent." (Doc. 12 at 18). But this Court need not resolve the factual question regarding whether Plaintiff's symptoms actually improved with treatment because that question rests with the ALJ. *Andrews*, 53 F.3d at 1039 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."). On appeal, the Court must determine whether the ALJ's decision to partially discredit NP Radcliffe's opinion was supported by substantial evidence. *Woods*, 32 F.4th at 787. For the reasons previously discussed, the Court finds the ALJ's decision was supported by substantial evidence.

Finally, Plaintiff argues the ALJ "did not rely on any medical opinions in this case" and improperly "played doctor" by substituting her "own lay opinion for that of a medical professional's." (Doc. 12 at 16). Plaintiff's argument fails because the ALJ clearly relied

on medical opinions in crafting the RFC. The ALJ found NP Radcliffe's opinion "partially persuasive," which, by definition, means the ALJ credited and relied on part of her opinion. The ALJ relied on NP Radcliffe's opinion that Plaintiff had marked social limitations, but found he had "no more than moderate limitations concentrating, persisting, or maintaining pace, and adapting or managing oneself." As discussed, both NP Radcliffe's report and other evidence in the record supports this conclusion.

### B. Plaintiff's Subjective Symptom Testimony

Plaintiff argues the ALJ committed materially harmful effort by rejecting Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence in the record. (Doc. 12 at 19). Defendant asserts that the ALJ reasonably considered Plaintiff's subjective complaints within his symptom testimony. (Doc. 18 at 8).

### 1. Legal Standard for Evaluation of Subjective Symptom Testimony

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.1991)). If there is such objective evidence, and "no evidence of malingering," "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). "The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the *power* to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (emphasis added).

When assessing witness credibility, an ALJ may consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less

- 16 -

than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1282).

## 2. The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony

Although the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," she found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Doc. 10-3 at 28). The ALJ concluded that some of Plaintiff's statements about his limitations were "less reliable":

> For example, he said that he cannot apply for work because he gets really angry and emotional, his hygiene is poor, and he has difficulty managing his time (20F/2). However, the claimant also stated that he has never been gainfully employed or even tried to work, and that he is not sure what he is capable of (20F/2). The claimant has experienced difficulties graduating high school and obtaining his GED but reported getting average to below average grades and said he "messed around a lot" (20F/3).

> In terms of claimant's depressive symptoms, he said he has always been depressed since childhood, but he also reported increased depression following his father's passing in December 2016 (2A/5; 20F/2). The claimant reported hearing auditory hallucinations, but denied hearing command voices and otherwise described hearing people talking to each other. Likewise, claimant's mother said that he has experience suicidal and homicidal ideation in the past, but the claimant denied any suicidal ideation or past attempts (20F/2). The claimant has received mostly outpatient clinical therapy for his mental impairments, and he has no history of psychiatric hospitalization or intensive outpatient, partial hospitalization, or residential treatment programs (20F/2). Despite alleging depression since age four, it does not appear that the claimant received any mental health treatment from 2014 through 2020, despite claimant's reference to family counseling.[2] As of October 2023, claimant said he had not received any mental health therapy in approximately seven months (20F/2).

(Doc. 10-3 at 29).    The ALJ began her symptomology summary by noting that Plaintiff's "symptomology is generally consistent in the record and supports his severe impairments." (Doc. 10-3 at 28). Plaintiff argues that the ALJ: (1) contradicted this statement by

---

[2]    The Court notes that Plaintiff received treatment in 2018 and 2019. (Doc. 12 at 3–4). However, the ALJ's statement that Plaintiff did not receive treatment from 2014 to 2020 appears to be a scrivener's error because on the immediately preceding page of the decision, the ALJ references and cites to a psychiatric exam from November 2019. (Doc. 10-3 at 28, citing to Doc. 10-10 at 175).

"providing a general summary of [Plaintiff's] medical records in support of finding [Plaintiff] not disabled," and (2) failed to explain this inconsistency. (Doc. 12 at 20). But the ALJ's statement is not inconsistent with the ultimate non-disability determination. The ALJ acknowledged Plaintiff's impairments with citations to the record, but ultimately found that those impairments were not so limiting as to preclude all work activity. The ALJ's acknowledgment of Plaintiff's "severe impairments" does not equate to a finding of disability.

Plaintiff asserts that the ALJ erred by rejecting Plaintiff's symptom testimony, alleging the ALJ "failed to connect anything specific in the medical record to a specific inconsistency with any particular portion of [Plaintiff's] work-preclusive symptom testimony." (Doc. 12 at 20).

The Court begins with a brief recap of Plaintiff's work-preclusive symptom testimony. Plaintiff testified "he does not feel like he is ready to go to work" due to "his anger issues and being easily upset, which he feels would be unprofessional." (Doc. 10-3 at 26). He claimed that he is "triggered by anything that he does not like" and will respond by either yelling or becoming passive. (Doc. 10-3 at 26). Plaintiff also experiences anxiety in public places, has difficulty focusing and concentrating, and "occasionally forgets to shower and requires reminders from his mother." (Doc. 10-3 at 26).

Although the ALJ found that Plaintiff's testimony regarding his anxiety, irritability, difficulty focusing, and hygiene issues were "generally consistent with the record," she also found that Plaintiff's own statements were inconsistent with the alleged severity of his impairments. (Doc. 10-3 at 28). Citing to Plaintiff's post-hearing psychological evaluation, the ALJ noted Plaintiff's statements that "has never been gainfully employed or even tried to work, and that he is not sure what he is capable of."[3] (Doc, 10-3 at 29, citing Doc. 11-6

---

[3]    Plaintiff argues that the ALJ failed to show how these statements were inconsistent with the record. The Court disagrees. As the Court explains, the ALJ reasonably discredited Plaintiff's testimony that he is unable to apply for work because Plaintiff had never applied for or held a job. When the ALJ asked Plaintiff why he had not tried to work, he testified: "I don't know. I don't feel like I'm ready." (Doc. 10-3 at 50). But Plaintiff's subjective feelings about his readiness to work do not necessarily reflect an objective inability to work.

at 27). Plaintiff's claim that he does not "know what [he] is capable of," combined with the fact he had never worked before, is inconsistent with Plaintiff's position that his impairments wholly preclude him from all work activity. *See Vasquez v. Colvin*, CV-12-02486-PHX-BSB, 2014 WL 65305, at *18 (D. Ariz. Jan. 8, 2014) (plaintiff's limited work history was a legally sufficient reason to discount her credibility); *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) ("A lack of work history may indicate a lack of motivation instead of a lack of ability."); *Ghanim*, 763 F.3d at 1163 (an ALJ may consider a claimant's prior inconsistent statements when assessing the claimant's credibility).

Evidence in the medical record also contradicts Plaintiff's testimony regarding the extent of his problems focusing and concentrating. Plaintiff testified that he "couldn't really work that long" at school and was "off-zone" because he "couldn't focus *at all*." (Doc. 10-3 at 53–54) (emphasis added). However, Plaintiff participated in a 2.5-hour session with a clinical psychologist where he successfully completed a psychological survey and various neuropsychological and intelligence-based tests. (Doc. 11-6 at 26). The ALJ noted that Plaintiff was able to stay on task without redirection and complete the interview without unnecessary breaks. (Doc. 10-3 at 24). Plaintiff's ability to complete multiple tests during a multi-hour examination contradicts his testimony that he is unable to focus "at all," (Doc. 10-3 at 54), which serves as a permissible basis to discount his testimony, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

The ALJ also addressed Plaintiff's depressive symptoms, noting that Plaintiff denied any suicidal ideation or past attempts, and had no history of "psychiatric hospitalization or intensive outpatient, partial hospitalization, or residential treatment programs."[4] (Doc. 10-3 at 29). The ALJ highlighted the fact that, as of October 2023,

---

[4]    Plaintiff asserts that the ALJ's statement that "Plaintiff had never been hospitalized" is "not a specific, clear, and convincing reason to reject [his] symptom testimony, as psychiatric hospitalization is not a requirement to show a claimant is disabled." (Doc. 12 at 22). To the extent that the ALJ discounted Plaintiff's symptom testimony because he had not been hospitalized for his mental health impairments, the Court agrees that was improper. *Ferguson v. O'Malley*, 95 F.4th 1194, 1201 (9th Cir. 2024) ("[A]s we have repeatedly held, at step two of the symptom analysis, the ALJ cannot rely on an *absence* of positive medical evidence to discredit a claimant's subjective symptom testimony.")

Plaintiff had not received any mental health therapy in nearly seven months. (Doc. 10-3 at 29, citing Doc. 11-6 at 27). Before this point, Plaintiff had been receiving both medication *and* therapy to address his mental health symptoms. Plaintiff's mother testified that he had "stepped away" from therapy because his current treatment team "does not have a male therapist." (Doc. 10-3 at 27–28, 60–61). She testified that Plaintiff's team was currently trying to "outsource treatment" and find a male therapist to see him. (Doc. 10-3 at 27–28, 60–61). However, the record shows that Plaintiff received care from Amanda Radcliffe, a behavioral health nurse practitioner. (Doc. 10-3 at 31). It is thus unclear why Plaintiff required a male therapist, or why Plaintiff did not independently attempt to establish care with a male therapist to address his symptoms. Instead, he stopped therapy entirely. Plaintiff's voluntary, seven-month lapse in treatment, despite his allegedly debilitating mental health impairments, is a sufficient reason to discredit his testimony regarding the severity of his symptoms. *Tommasetti*, 533 F.3d at 1039 (when weighing a claimant's credibility, the ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment").

Plaintiff argues that the seven-month lapse in therapy was an insufficient reason to reject his symptom testimony because "the ALJ did not inquire as to the reason for a lapse in therapy services." (Doc. 12 at 23) (citing SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow

(emphasis in original). However, any such error is harmless, because, as discussed, the ALJ permissibly discounted Plaintiff's subjective symptom testimony on other grounds. Contradictory medical evidence regarding Plaintiff's ability to focus, alongside Plaintiff's lack of work history, contradictory statements about his ability to work, and failure to continue his mental health therapy appointments, are all valid reasons to discredit his subjective symptom testimony. *See Carmickle*, 533 F.3d at 1162 (indicating that if the ALJ rejects a Plaintiff's symptom testimony for a single permissible purpose, then the ALJ's errant rejection of the testimony for other additional reasons is harmless).

Plaintiff further suggests that the ALJ, by highlighting the fact Plaintiff had never been hospitalized, may have "meant to state that [Plaintiff's] psychiatric treatment had been conservative, [which] is incorrect." (Doc. 12 at 23). Although evidence of conservative treatment is sufficient evidence to discount a claimant's testimony about the extent of his symptoms, *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), the ALJ made no comment on whether Plaintiff's treatment plan was conservative or aggressive. Because the ALJ did not discredit Plaintiff's testimony on this basis, the Court declines to engage with Plaintiff's argument as to whether his psychiatric treatments were conservative or not.

prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis *without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints*.")). Plaintiff contends that the reason for discontinuing treatment "is not in the record." (Doc. 19 at 10). The Court disagrees.

Plaintiff's hearing took place on June 15, 2023. At a subsequent psychological evaluation on October 16, 2023, he reported that he had not attended therapy in seven months. Although the ALJ could have contacted Plaintiff after the evaluation to question him regarding the lapse in treatment, SSR 16-3p, 2017 WL 5180304, at *9, she had no need to do so. As discussed, Plaintiff's mother testified at the hearing that he "stepped away" from therapy because his treatment team did not have a male therapist. By rejecting Plaintiff's subjective symptom testimony based, in part, on his failure to continue therapy, the ALJ implicitly considered this explanation and deemed it inadequate. The Court finds no error.

Ultimately, in making her adverse credibility finding, the ALJ permissibly relied on: (1) the conflict between Plaintiff's testimony and his post-hearing psychological interview statements, (2) contradictory evidence in the record showing that Plaintiff could focus and concentrate to a higher level than he alleged, and (3) Plaintiff's failure to continue mental health therapy as part of his treatment plan. Because these are "specific, clear and convincing" reasons for discounting Plaintiff's testimony, the Court will not disturb the ALJ's credibility finding.

Plaintiff also asserts that the ALJ failed to explain why Plaintiff's "normal" mental status examination findings "were outweighed by the abnormal findings that were consistent with [Plaintiff's] symptom testimony." (Doc. 12 at 21). However, the ALJ was not required to do so; rather, the ALJ was only required to identify what parts of Plaintiff's testimony are "not credible and what evidence undermines the claimant's complaints."

*Ghanim*, 763 F.3d at 1163. Furthermore, the ALJ did not conclude that any abnormal clinical finding was "outweighed" or rendered insignificant. (*See generally* Doc. 10-3). Rather, as the Court has concluded above, the ALJ properly weighed the medical evidence as a whole in making her credibility and RFC determinations. *See Maneri v. Comm'r of Soc. Sec. Admin.*, No. CV-23-08054-PCT-DGC, 2024 WL 413547, *10–11 (D. Ariz. Feb. 5, 2024) (quoting *Fuentes v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00147-PHX-JJT, 2023 WL 5013109, *4 (D. Ariz. Aug. 7, 2023)) (citing *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("Plaintiff argues that the ALJ erred by failing to specifically discuss why the cited [abnormal] findings 'cancelled out' other [supportive] findings. However, 'the ALJ does not need to discuss every piece of evidence.' Instead, the ALJ was required to explain why he found [the physician's] assessments inconsistent with the other medical evidence in a manner supported by substantial evidence, which he did.")).

## IV.    ALTERNATIVE PROCEEDINGS

Finally, Plaintiff requests remand for a calculation of benefits pursuant to the credit-as-true rule, or in the alternative, further administrative proceedings. (Doc. 12 at 25). However, because the Court is upholding the ALJ's decision, the Court denies Plaintiff's request for remand without considering the credit-as-true doctrine. *See Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017) (stating a direct award of benefits is only appropriate "when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for a denial of benefits").

## V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is AFFIRMED.

/ / /

/ / /

/ / /

/ / /

1    **IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment
2    accordingly.
3         Dated this 22nd day of October, 2025.

James A. Teilborg
Senior United States District Judge